ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM
| iThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joslyn Renee Alex, an attorney licensed to practice law in Louisiana.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1988. In 2003, we suspended respondent from the practice of law for thirteen months, fully deferred, subject to a two-year period of supervised probation with conditions. In re: Alex, 02-1289 (La. 1/14/03), 835 So.2d 455 (“Alex I”). The misconduct at issue involved respondent’s failure to timely pay third-party medical providers, as well as commingling and conversion of client and third-party funds, *896 arising out of the gross mismanagement of her law practice.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS
This matter originally consisted of two counts of formal charges. The second count of the formal charges alleged that respondent failed to pay an arbitration award rendered in favor of a former client. In fact, however, respondent |ahad paid the arbitration award to her former client pri- or to the filing of the formal charges, and did so less than two months after the arbitration award was rendered against her. Accordingly, neither the hearing committee nor the disciplinary board found any violation of the Rules of Professional Conduct by respondent in connection with this count. The ODC does not object to these findings. We therefore will make no further reference to the second count of the formal charges, and will simply refer to the disciplinary proceeding as if it had always consisted of a single count of formal charges.

The Trust Account Matter

Pursuant to its investigation of a complaint filed against respondent, the ODC performed an audit of respondent's client trust account for the period of March through December of 2010. Respondent submitted accounting records requested by the ODC, including bank statements, copies of canceled checks, and settlement statements for the period of April through December 2010.[1]
According to the auditor’s report, respondent misused and commingled client trust funds. The accounting records reflect that inappropriate payments were made from the trust account. Respondent also failed to disburse attorney’s fees from the account as they were earned, and she made numerous accounting and procedural errors regarding settlement documents. In some instances, the statements contained mathematical errors. In others, the statements showed that individuals received settlement funds, although there was no evidence of an existing settlement or of a retainer having been deposited on the payee’s behalf.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a)(b) (safekeeping |sproperty of clients or third persons) and 1.15(d) (failure to timely remit funds to a client or third person).
DISCIPLINARY PROCEEDINGS
In March 2015, the ODC filed formal charges against respondent. Respondent, through counsel, answered the formal charges and admitted to errors with her trust account. This matter then proceeded to a formal hearing on the merits, conducted by a hearing committee on September 1, 2015.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee summarized the witness testimony as follows, in part:
Traci Fontenot, a forensic accountant formerly employed by the ODC, concluded that respondent’s funds were not held separately in her client trust account. She noted that funds were advanced to clients from the account before settlement funds were received. She noted that some third parties were not paid and that respondent paid personal expenses through the ac *897 count.[2] She believed the audit showed commingling, conversion, misuse of the trust, and accounting errors, but she could not recall a time when the account was overdrawn. She concluded that in only two instances, one for $.77 and one for $75.02, did the client not receive the full amount due to them.
^Respondent testified that she did not know that other people were issuing checks on her trust account. Due to previous problems, she set up a computer generated check writing system. After a settlement, her staff would prepare the breakdown of disbursements, and she would generate the checks. Once her staff was trained, respondent did not typically verify the breakdown. Sometimes, respondent would negotiate medical bills and reduce her fee, but she would not necessarily note the changes on the settlement disbursement forms.
Respondent testified that she left earned fees in her trust account because (1) her practice keeps her out of the office at least two days a week, and she prioritizes payments to clients and third-party providers, and (2) she has experienced theft by staff members who forged operating account checks when they knew funds were available. During the audit period, respondent reconciled her account once a year. Recognizing the problems with her accounting protocols, she has since revised these procedures and engaged the services of an accountant to make sure her trust and operating accounts are properly managed. Respondent testified that she has opened a separate account for her fees and that no one else has access to her trust account checkbook.
In her testimony, respondent’s accountant, Sandra Hampton, made no comments about the audit, instead focusing on assisting respondent in implementing safeguards to protect against theft and mismanagement of her accounts. Ms. Hampton now reconciles respondent’s trust account quarterly. Each month, respondent sends her bank statements to Ms. Hampton, who verifies all settlement disbursements and investigates all stale checks. Copies of all checks are now made before being mailed and settlement disbursement checks are being tracked. Respondent now has an office separate from her home, limiting access of employees, and locking file cabinets. In Ms. Hampton’s opinion, these safeguards are appropriate and sufficient to protect the integrity of respondent’s trust account.
| fiBased on this testimony and the other evidence in the record, the hearing committee made factual findings, including the following:
No client funds were wrongfully withheld. The ODC’s forensic accountant concluded that in two cases, client funds were not paid in the amounts of $.77 and $75.02. However, in the first case, the amount owed to the client was paid in full, and respondent was underpaid by $1.13. In the *898 second case, the plaintiff was paid the amounts owed according to the settlement disbursement form, but was actually owed less. The same form indicates respondent underpaid herself $689.95. Therefore, the committed disagreed with Ms. Fontenot’s conclusion that $75.02 of client funds were not paid. Those funds are due to respondent.
The ODC has failed to prove, by clear and convincing evidence, that third-party providers were not paid. Respondent testified to the health care providers’ own accounting problems, which problems were corroborated by Ms. Hampton. The only evidence that court costs were not paid on one occasion was the absence of bank records during the audit period showing the check cleared respondent’s account. Respondent testified that the court costs were paid but offered no documentation. Therefore, the ODC failed to prove by clear and convincing evidence that court costs remained outstanding.
The accounting protocols and methods used by respondent were negligent. Checks were written without identifying the associated case and records lacked proper documentation distinguishing multiple cases for a single client. Respondent claimed to have accounted separately within the files for each case, but that information was not introduced at the hearing. While she had explanations for some discrepancies, much of which depended on documentation outside of the audit period, that documentation was not provided. Respondent used the trust account to hold her fees and accounted for those fees with checks issued in increments to be cashed as needed.
| (Nevertheless, respondent was a credible witness, and the committee believed her explanations and benign intentions. Respondent, with the assistance of Ms. Hampton, has implemented accounting procedures and protocols that should remedy the lack of documentation and confusion that resulted from her 2010 accounting practices.
Based on the above factual findings, the committee determined respondent negligently violated Rules 1.15(a) and 1.15(b), by failing to properly account for and remove fees earned from her trust account. Checks for her earned fees were issued, but not cashed until the need arose for expenses out of the operating account to be paid. The committee did not find a violation of Rule 1.15(d).
The committee found respondent acted negligently. While her conduct did not cause actual harm, her negligent accounting caused potential injury to clients, to third parties, and to respondent herself. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction is a public reprimand.
In aggravation, the committee found a prior disciplinary record and substantial experience in the practice of law (admitted 1988). In mitigation, the committee found the absence of a dishonest or selfish motive, a timely good faith effort to rectify “the negligence in her accounting,” remorse, and remoteness of prior offenses. The committee concluded that the balance of aggravating and mitigating factors warrants no deviation from the baseline sanction.
Ultimately, the committee found respondent’s testimony to be sincere and made clear her efforts to properly manage her trust account. However, the committee noted that the documentation was insufficient, which can lead to confusion and mistakes. Absent any improvement, the potential for injury is present; therefore, the implementation of both education and *899 qualified assistance is the appropriate remedy in this case.
|7In conclusion, the committee recommended respondent be publicly reprimanded, be required to attend the Louisiana State Bar Association’s (“LSBA”) Trust Accounting School, and be assigned a monitor for one year to confirm that the accounting protocols to which respondent and Ms. Hampton testified are implemented and sufficient to maintain the integrity of respondent’s trust account.
The ODC objected to the leniency of the hearing committee’s recommended sanction, as well as to the conclusion that there was no violation of Rule 1.15(d).

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s findings of fact are supported by the record and do not appear to be manifestly erroneous. The board also determined that the committee correctly applied the Rules of Professional Conduct, except that the board did not find a violation of Rule 1.15(b). That rule provides that a lawyer shall not deposit his/her own funds in a trust account except for paying or preventing bank charges. The board reasoned that although respondent left her fees in her trust account for a prolonged period of time, there was no evidence that she deposited her own separate and identifiable funds in the account in violation of Rule 1.15(b).
The board determined respondent violated a duty owed to her clients by putting their funds at risk by mismanaging her trust account. Her conduct was not.simply negligent. At the very least, it was grossly negligent, if not knowing. After being disciplined in Alex I for mismanaging her trust account, respondent did not take appropriate steps to effectively manage the account. The record does not indicate that respondent had a dishonest or selfish intent and there is no evidence that any client or third party was actually harmed by her misconduct. However, |sgiven the extent of the mismanagement and lack of recordkeeping, the potential for harm was great. The applicable baseline sanction is suspension.
The board adopted the aggravating and mitigating factors found by the committee. The board also recognized a pattern of misconduct as an additional aggravating factor, as the trust account mismanagement was an ongoing problem. The board gave little weight to the mitigating factor of remoteness of prior offenses, given the similarity of the present misconduct to respondent’s prior misconduct.
After further considering this court’s prior jurisprudence addressing similar misconduct, a majority of the board recommended respondent be suspended from the practice of law for one year and one day, with all but thirty days deferred, followed by a two-year period of supervised probation, during which she should be required to attend the LSBA’s Trust Accounting School and undergo quarterly trust account audits performed by an ODC-approved CPA, who will report the findings to the ODC. One board member dissented and would recommend the period of suspension be fully deferred.
Neither respondent nor the ODC filed a timely objection in this court to the disciplinary board’s recommendation. However, after the expiration of the time for filing objections under Supreme Court Rule XIX, § 11(G)(1), respondent sought to file a “late” objection. On August 31, 2016, the court issued an order rejecting respondent’s objection as untimely and, therefore, procedurally improper but permitting the filing of briefs, without oral argument. Respondent and the ODC both filed briefs in response to the court’s order.
*900 DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an | independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150.
The record of this matter supports a finding that respondent grossly mishandled her trust account. This misconduct amounts to a violation of Rule 1.15(a) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
Respondent violated duties owed to her client, causing the potential for serious harm. Fortunately, no actual harm resulted. Respondent’s misconduct was at least grossly negligent, if not knowing, as she continued to mismanage her trust account and failed to amend her accounting practices after her 2003 suspension in Alex I. The baseline sanction for this type of misconduct is suspension. See Standard 4.12 of the ABA’s Standards for Imposing Lawyer Sanctions (“Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a | inclient.”). The record supports the aggravating and mitigating factors found by the disciplinary board.
In its report, the board cited cases in which we have imposed fully deferred suspensions for trust account mismanagement when there was little or no actual harm.[3] We agree that respondent’s misconduct is similar to those cases, in that she mismanaged her trust account, creating the potential for harm to clients and third parties. However, it is significant that unlike the attorneys in those cases, respondent has a diseiplinaiy history for similar *901 misconduct. Accordingly, we find a fully deferred suspension is not appropriate. Rather, considering all the factors of this case, we will adopt the board’s recommendation and suspend respondent from the practice of law for one year and one day, with all but thirty days deferred, followed by a two-year period of supervised probation governed by the conditions outlined by the board.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Joslyn Renee Alex, Louisiana Bar Roll number 18760, be and she hereby is suspended from the practice of law for one year and one day. It is further ordered that all but thirty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for two years, subject to the conditions set forth in the disciplinary board’s report." The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent did not provide the requested accoimting records for March 2010.

. In her testimony before the committee, Ms, Fontenot noted that three checks, totaling $2,366, were issued directly from the trust account for office expenses. Ms. Fontenot also indicated that mortgage payments, totaling $8,706.18, were made directly from the trust account. According to respondent, the mortgage company falsely believed she had overpaid her mortgage, and therefore, she placed the funds in the trust account to hold until they realized the error. Ms. Fontenot also noted that a payment of $2,500 was made to Mid-South Bank, but respondent provided no explanation regarding this payment. The audit revealed additional trust account transactions, including the following: $400 in Christmas bonuses paid to respondent’s employees, which respondent claimed were unauthorized, $200 paid to St. 'James Baptist Church, and $120 paid to Dupuis Air Conditioning. Respondent indicated that the signatures on the bonus checks were forgeries.

. See In re: Spears, 11-1135 (La. 9/2/11), 72 So.3d 819 (fully deferred one year and one day suspension, subject to a two-year period of supervised probation, imposed upon an attorney who failed to maintain the financial records of his trust account, which resulted in a negligent commingling and conversion of funds); In re: Cicardo, 04-0828 (La. 7/2/04), 877 So.2d 980 (fully deferred one year suspension, subject to a two-year period of probation with conditions, imposed upon an attorney who mishandled his client trust account by keeping personal funds in the account, which he occasionally borrowed to fund his operating account, but caused no actual harm to his clients or to third parties); In re: Crooks, 00-1359 (La. 6/23/00), 762 So.2d 1077 (fully deferred one year and one day suspension, subject to a two-year period of probation with conditions, imposed upon an attorney for the unintentional conversion of three clients' funds stemming from negligent mismanagement of his trust account and failure to supervise his non-lawyer assistants).